UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSE DAVID QUEZADA,

                    Plaintiff,                    15-CV-10105 (VEC) (BCM)

        -against-                                 **REPORT AND RECOMMENDATION
                                                  TO THE HONORABLE VALERIE
KRESHNIK BAKRAQI, THOMAS                          CAPRONI**
DEMKIW, and KELVIN GLOVER,

                    Defendants.


Plaintiff Jose David Quezada, proceeding *pro se*, claims that he was wrongfully arrested

on January 19, 2013, that he was wrongfully prosecuted on charges that arose from that arrest but

were later dismissed, and that following his arrest he was unlawfully strip-searched and denied

medical care. Now before me for report and recommendation is a motion by defendants Kreshnik

Bakraqi, Kelvin Glover, and Thomas Demkiw for summary judgment on all of plaintiff's claims.

For the reasons set forth below, I respectfully recommend that the District Judge grant the motion

and dismiss the case.

## BACKGROUND

## I.      Procedural Background

Plaintiff filed this action on December 29, 2015. His complaint (Dkt. No. 2), read

generously, seeks monetary damages pursuant to 42 U.S.C. § 1983 for false arrest, malicious

prosecution, and denial of medical treatment, all stemming from his arrest on January 19, 2013, in

the Bronx, by officers of the New York City Police Department (NYPD). *See McPherson v.

Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d

Cir.1994)) ("[W]e read the pleadings of a *pro se* plaintiff liberally and interpret them to raise the

strongest arguments that they suggest.").

Defendants answered on May 5, 2016, admitting that plaintiff was arrested on January 19, 2013, and charged with various narcotics offenses, as alleged in the complaint, but otherwise denying plaintiff's allegations. Ans. (Dkt. No. 14) ¶¶ 1-9.

During his deposition, on August 17, 2016, plaintiff suggested that he also intended to assert a claim for racial profiling, testifying that he was "targeted for no reason, whether it was for race or – I was targeted in my community for no reason." Quezada Dep. Tr. (Dkt. No. 56) at 48:25-49:2; *see also id.* at 80:14-16 ("Not everyone who lives in a certain community or looks a certain way or dress [sic] a certain way is committing a crime, you know.")  In addition, plaintiff testified that he was strip-searched after his arrest, and "would like to sue for that" as well. *Id.* at 48:4-9.[1]

On December 13, 2016, after discovery closed, defendants moved for summary judgment, filing a Notice of Motion (Dkt. No. 31); a Memorandum of Law (Dkt. No. 35); a Notice to Pro Se Litigant (Dkt. No. 32); a Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1 (Dkt. No. 33); and the Declaration of Assistant Corporation Counsel Erin Ryan (Dkt. No. 34), to which defendants attached the affidavits of defendants Demkiw and Glover, as well as police records concerning plaintiff's arrest and selected excerpts from plaintiff's deposition transcript.[2]

Plaintiff responded to the summary judgment motion on January 10, 2017, filing a document entitled Plaintiff Pro-Se Opposition to Defendant's Motion for Summary Judgment (Pl. Opp.) (Dkt. No. 38), which appears intended, at least in part, to respond to defendants' Local Civil Rule 56.1 Statement and to which plaintiff attached additional police records, excerpts from his

---

[1] Plaintiff's deposition took place at the Franklin Correctional Facility, where he was incarcerated on charges unrelated to the January 19, 2013 arrest underlying this action. *See* Quezada Dep. Tr. at 14:22-16:1.

[2] At my request, defendants filed plaintiff's complete deposition transcript on August 30, 2017. (*See* Dkt. Nos. 55, 56.)

deposition, and documents relating to his contention – discussed in more detail below – that he had a lawful prescription for suboxone at the time of his arrest. Additionally, on January 13, 2017, plaintiff submitted a Memorandum of Law. (Dkt. No. 40.) Defendants filed a Reply Memorandum (Dkt. No. 41) on January 31, 2017.

At some point in early 2017 plaintiff was released from custody, and on February 24, 2017, he provided the Court with updated contact information. (Dkt. No. 42.)

On May 2, 2017, plaintiff moved to re-open discovery, reporting that he had located Jenny Casella, a witness to the arrest, and that he "would like to have her deposed." (Dkt. No. 51.) In an Order dated May 4, 2017 (Dkt. No. 52), I declined to direct the deposition, but permitted plaintiff to submit a sworn declaration from Casella, which he did under cover of a letter dated May 17, 2017. (Dkt. No. 53.) On June 1, 2017, defendants filed a Supplemental Memorandum of Law (Dkt. No. 54) in response to Casella's declaration.

Plaintiff has requested appointment of pro bono counsel five times: in writing on May 23, 2016 (Dkt. No. 16), March 27, 2017 (Dkt. No. 44), April 4, 2017 (Dkt. No. 47), May 2, 2017 (Dkt. No. 50), and during a telephonic conference on November 1, 2016. (*See* Dkt. No. 26.) I denied the first two requests (*see* Dkt. Nos. 17, 46) and held the remaining requests in abeyance.

## II.     Facts

The following facts, taken from the evidence submitted in support of and in opposition to defendants' summary judgment motion, are undisputed unless otherwise indicated.[3]

---

[3] The record evidence includes relevant factual statements made in plaintiff's verified complaint. Ordinarily, allegations in a pleading are not considered evidence for summary judgment purposes. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324-25 (1986). However, plaintiff executed his complaint under penalty of perjury, in substantial compliance with 28 U.S.C. § 1746. To the extent its contents are otherwise admissible, therefore, the Court may treat the complaint as an affidavit. *See Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir. 1995) (where plaintiff "verifie[s] his complaint by attesting under penalty of perjury that the statements in the complaint [are] true to the best of his knowledge," the "verified complaint is to be treated as an affidavit for summary judgment

Plaintiff is a U.S. citizen, Quezada Dep. Tr. at 11:4-11, identified in police records as a Black Male, and was 33 years old on January 19, 2013. *See* Pl. Opp. Ex. D (mugshot); Ryan Decl. C (Quezada arrest report). That morning, plaintiff and his then-girlfriend Casella walked together down East Tremont Avenue in the Bronx. Pl. Opp. ¶¶ 2, 4, 10; Casella Decl. dated May 16, 2017 (Dkt. No. 53, at ECF pages 2-3), at 2; Def. 56.1 Stmt. ¶ 2. During the walk, plaintiff and Casella encountered William Davis, whom Casella knew. Quezada Dep. Tr. at 34:9-35:20. Plaintiff and Casella stopped walking, and the three individuals stood together briefly. *Id.* at 43:13:24. Thereafter, Davis walked in one direction, and plaintiff and Casella continued in the opposite direction on East Tremont Avenue. *Id.* at 43:24-44:2; Demkiw Aff. dated Dec. 12, 2016 (Dkt. No. 34-5), ¶ 6.

The encounter was observed by Officer Demkiw, a then five-year veteran of the NYPD, who was working a "Buy and Bust" operation with Detective Bakraqi, Detective Glover, and other NYPD officers who are not parties herein. Demkiw Aff. ¶¶ 1-5. At the time Demkiw observed the encounter among plaintiff, Casella, and Davis, he was in an unmarked police vehicle on East Tremont Avenue. Demkiw Aff. ¶ 3. The area was a "heavy crime area, specifically for drug sales." *Id.* ¶ 7. Demkiw attests that during the encounter he "observed plaintiff hand a small object to Mr. Davis, who placed the small object in his right front pants pocket." *Id.* ¶ 6. Plaintiff denies that he handed anything to Davis, *see* Pl. Opp. ¶ 4; Quezada Dep. Tr. at 36:13-18, but testified that Casella

---

purposes"); *Rickett v. Orsino*, 2013 WL 1176059, at *2 n.5 (S.D.N.Y. Feb. 20, 2013) (construing plaintiff's verified pleading as an affidavit for purposes of summary judgment), *report and recommendation adopted*, 2013 WL 1155354 (S.D.N.Y. Mar. 21, 2013); *Barrington v. New York*, 806 F. Supp. 2d 730, 737 (S.D.N.Y. 2011) ("Since [plaintiff] verified his complaint under penalty of perjury, the complaint can serve as an affidavit for summary judgment purposes.").

might have given him something. *See id*. at 36:24 (Casella "might have gave him her number"); *id*. at 37:2-5 (Casella "probably handed him my number or something").[4]

After Davis parted company from plaintiff and Casella, Demkiw and his partner (Officer French, not a party herein) exited their vehicle and approached Davis, who "informed [Demkiw] that during his interaction with plaintiff, plaintiff had offered him crack cocaine and suboxone," Demkiw Aff. ¶ 9, but that Davis "had not been interested in the suboxone." *Id*. The officers searched Davis, found "two zips of crack cocaine" in his right front pants pocket, and placed him under arrest at approximately 11:20 a.m. *Id*. ¶¶ 10-11; *see also* Ryan Decl. Ex. D (Davis arrest report); *id*. Ex. H (Demkiw memo book).[5]

Following Davis's arrest, Demkiw radioed members of his team, including defendants Glover and Bakraqi, informing them that he "had observed plaintiff engage in a hand-to-hand drug transaction" with Davis, "from whom I recovered drugs." Demkiw Aff. ¶¶ 12-13; *see also* Glover Aff. dated Dec. 12, 2016 (Dkt. No. 34-6), ¶ 4. Demkiw gave Glover and Bakraqi plaintiff's physical description, location, and direction of travel. Demkiw Aff. ¶¶ 12-13; Glover Aff. ¶ 4.

Based on the information provided by Demkiw, Glover located plaintiff nearby, and Glover, Bakraqi and Sergeant Adorno (not a party herein) stopped plaintiff while waiting for Demkiw to join them. Glover Aff. ¶ 6; Pl. Opp. ¶ 4. When Demkiw arrived at the scene, he confirmed that plaintiff was the person he had observed with Davis. Glover Aff. ¶ 7; Demkiw Aff. ¶ 14. One or more of the officers searched plaintiff, finding what Glover describes as an "orange

---

[4] Casella herself is silent as to this issue. She attests that she was with plaintiff on "the day this incident happened," and that plaintiff was arrested even though he "did not sell or buy drugs to anyone." Casella Decl. at 1-2. However, she does not otherwise describe the events leading to plaintiff's arrest and does not even mention the interaction with Davis, thus shedding no light on the question whether Quezada handed anything to Davis during that interaction. *Id*.

[5] The substance found in Davis's pocket field-tested positive for cocaine. *See* Ryan Decl. Ex. I (Davis field test report.)

filmy substance" that he recognized as suboxone. Glover Aff. ¶¶ 8-9; *see also* Ryan Decl. Ex. J

(Bakraqi memobook, stating that Quezada had "one pill of suboxone"); *id.* Ex. K (property invoice,

listing "1 orange pill of suboxone" packaged in a "plastic bag"). Plaintiff was arrested by Detective

Bakraqi at approximately 11:24 a.m., handcuffed, and placed in a police van. Ryan Decl. Ex. C

(Quezada arrest report); Quezada Dep. Tr. at 64:23-65:3, 45:14-45:25.[6] The charges on arrest were

Criminal Sale of a Controlled Substance in the Third Degree, in violation of N.Y. Penal Law

§ 220.39, and Criminal Possession of a Controlled Substance in the Seventh Degree, in violation

of N.Y. Penal Law § 220.03. Ryan Decl. Ex. C.

Plaintiff does not deny that he was carrying suboxone, a controlled substance, at the time

of his arrest, though he cannot recall how much, or whether it was "in a bag or in my pocket."

Quezada Dep. Tr. at 37:6-7, 39:9-11. Plaintiff asserts that he had a prescription for the suboxone,

which was his "medication for a serious drug addiction." Pl. Opp. ¶ 6; *see also id.* Exs. B, F.[7] He

---

[6] It is not clear from the record whether plaintiff was arrested before or after Officer Demkiw arrived at the scene of the arrest. *Compare* Demkiw Aff. ¶ 13 (plaintiff was "stopped and apprehended by another member of the team" before Demkiw arrived at the site of the arrest) *with* Glover Aff. ¶¶ 6-10 (plaintiff was arrested after Demkiw arrived to identify him and after a search of plaintiff's person revealed the suboxone). It is clear that the search, and the discovery of the suboxone, preceded the arrest. *See id.* ¶ 10 (plaintiff was arrested "as a result of . . . Demkiw's observations and the drugs recovered from plaintiff's person"); Def. 56.1 Stmt. ¶ 17 (plaintiff was arrested "[a]s a result" of, among other things, the recovery of the suboxone). It is equally clear that defendants rely on the discovery of the suboxone, among other things, to furnish probable cause for the arrest, *see, e.g.*, Glover Aff. ¶ 10; Def. 56.1 Stmt. ¶ 17; Def. Mem. of Law at 8 (there was "clear probable cause" for the arrest based on, among other things, "the drugs recovered from Mr. Davis and plaintiff").

[7] Plaintiff's Exhibit B is a Medicaid Member Historical Claim Detail Report, which appears to show that at some point suboxone was prescribed for him. Exhibit F is a pharmacy receipt which appears to show that plaintiff filled a prescription for suboxone "films strips" on October 8, 2012. Defendants urge me to strike both documents because they were "never produced to defense counsel during discovery," such that defendants would be "severely prejudiced" by their admission. Def. Reply Mem. at 5-7. However, there is no indication that Quezada intentionally withheld relevant documents within his possession, custody, or control. To the contrary: plaintiff explained at his deposition on August 17, 2016, that he still did not "have any paperwork available, medical, because of where I'm at," referring to the fact that he was incarcerated. Quezada Dep. Tr.

also claims that he had "proof of prescription of his medication (suboxone) on his person" at the time of his arrest, pointing to the property receipt he was given by the police, which lists, among other things, "personal papers." Pl. Opp. ¶ 8 & Ex. C. However, neither the property receipt nor any other document in evidence specifically refers to any prescription or prescription-related papers found at arrest. The NYPD's arrest report, prepared by defendant Bakraqi, states in relevant part: "Deft was in poss of one suboxone pill without prescription inside jeans pocket." Ryan Decl. Ex. C (Quezada arrest report), at 1. It is unclear whether plaintiff said anything to the officers about his prescription when he was arrested. At deposition, he testified that he "didn't get a chance to explain – there was no explanation. I was just put in cuffs." Quezada Dep. Tr. at 45:14-15.

Plaintiff was taken to the Forty-Sixth Precinct in the Bronx, where he was processed, searched, and booked. Quezada Dep. Tr. at 48:6-7; *id*. at 52:12-18; Ryan Decl. Ex. C (Quezada arrest report) at 1. During the search, "the officers that arrested me" were present. Quezada Dep. Tr. at 75:14-17. Plaintiff did not have any money in his possession, *see* Ryan Decl. Ex. K (property receipts); Pl. Opp. Ex. C (property receipt), and no additional evidence was found. He was then taken to "central booking," Quezada Dep. Tr. at 52:16-18, where he was seen by a judge, after which "they sent me to jail." *Id*. at 52:20-21.

---

at 38:15-16. Thereafter, by letter dated November 4, 2016 (Dkt. No. 28), plaintiff informed the Court that he had "reach[ed] out" to his former criminal defense attorney, had requested copies of documents relating to his suboxone prescription (documents which he had given that attorney during the pendency of the criminal action), and was "currently awaiting the documents." A month later, on December 14, 2016, Quezada wrote to the Court again (Dkt. No. 36), to "respectfully submit to you evidence of my Prescription Drug Suboxone." Among the evidence attached to that letter (at ECF pages 3-4) was the same Medicaid Member Historical Claim Detail Report that plaintiff later attached to his summary judgment opposition papers as Exhibit B. The record does not disclose when plaintiff obtained the pharmacy receipt attached as Exhibit F. However, given his *pro se* status, the difficulties imposed by his incarceration throughout the discovery period, and his demonstrated efforts to obtain and disclose records regarding his suboxone prescription, the harsh remedy sought by defendants for plaintiff's failure to obtain and produce those records earlier would be inappropriate.

By means of a Criminal Court Complaint signed by Detective Bakraqi at 9:15 p.m. on January 19, 2013, plaintiff was charged with Criminal Sale of a Controlled Substance in the Third Degree, in violation of N.Y. Penal Law § 220.39(1), Criminal Possession of a Controlled Substance in the Third Degree, in violation of N.Y. Penal Law § 220.16(1), and Criminal Possession of a Controlled Substance in the Seventh Degree, in violation of N.Y. Penal Law § 220.03. Ryan Decl. Ex. H (criminal complaint); Pl. Opp. Ex. E (same).[8] In the complaint, Bakraqi attests, among other things, that he was informed by Officer Demkiw that Demkiw observed a hand-to-hand transaction between plaintiff and Davis, that Davis placed the "small object" in his front coin pocket, and that drugs were later recovered from the same pocket. *Id*. In addition, Bakraqi attests that he was informed by Detective Glover that Glover "observed the defendant to have on his person one (1) orange filmy substance." *Id*.

The criminal charges against plaintiff were dismissed on May 1, 2013. Ryan Decl. Ex. L (certificate of disposition). There is no evidence in the record as to the reason for the dismissal. *See, e.g.*, Quezada Dep. Tr. at 55:7-8 (testifying only that the charges were dropped "in favor of the accused").

At his deposition, when asked about his injuries, plaintiff stated that he received abrasions on his wrists because of the handcuffs, but he did not need to see a doctor. Quezada Dep. Tr. at

---

[8] A person is guilty of criminal sale in the third degree, a Class B felony, when he "knowingly and unlawfully sells . . . a narcotic drug." N.Y. Penal Law § 220.39(1). A person is guilty of criminal possession in the third degree, another Class B felony, when he "knowingly and unlawfully possesses . . . a narcotic drug with intent to sell it." *Id*. § 220.16(1). A person is guilty of criminal possession in the seventh degree, a Class A misdemeanor, when "he or she knowingly and unlawfully possesses a controlled substance," *id*. 220.03, subject to certain exceptions not relevant here. Crack cocaine is a "narcotic drug" as that term is defined in the relevant statutes. *See id*. § 220.00(7); N.Y. Pub. Health Law § 3306 (Schedule II). Buprenorphine, which when combined with naloxone makes up suboxone, is a "controlled substance" but not a "narcotic drug." *See* N.Y. Penal Law § 220.00(5); N.Y. Pub. Health Law § 3306 (Schedule III).

65:5-6. There is no evidence that he complained of that injury to law enforcement personnel at the precinct or elsewhere. Plaintiff also testified that he was denied access to his suboxone while detained at the precinct "and at county Jail," Compl. at 3, which made him feel dizzy and nauseous for "a couple of days." Quezada Dep. Tr. at 52:6-8, 68:24-69:5. He asked someone at the precinct (he does not recall who) for his medication, but he was ignored. *Id*. at 51:2-19.  At some point after plaintiff "hit the jail" he received his medication, which "made him feel better" but did not quite alleviate his symptoms. *Id.* at 68:15-22. Plaintiff further testified that he felt emotionally violated by the search, which he referred to as a "strip search" but did not otherwise describe it. *Id*. at 66:19-22, 75:3-13, 77:13-15.

**ANALYSIS**

I.      **Summary Judgment Standard**

Summary judgment may be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp.*, 477 U.S. at 322-23; *Amaker v. Foley*, 274 F.3d 677, 680-81 (2d Cir. 2001). A dispute is genuine if there is "evidence such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If, on the other hand, no reasonable jury could rule for the non-moving party based on the evidence presented, then summary judgment must be granted. *Id.* at 254.

The moving party bears the initial burden of identifying the parts of the record that demonstrate the absence of a genuine dispute as to any material fact. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 322; *Koch v. Town of Brattleboro*, 287 F.3d 162, 165 (2d Cir. 2002). The court must then "examin[e] the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial," *Amaker*, 274 F.3d at 681, with "the inferences to be drawn from the underlying facts . . . viewed in the light most favorable to the party

opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). *See also Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)) (on summary judgment, "a Court is 'required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment'" is sought).

If the moving party meets its initial burden, the burden shifts to the non-moving party to establish a genuine dispute of material fact. *Celotex Corp.*, 477 U.S. at 322; *Beard v. Banks*, 548 U.S. 521, 529 (2006); *Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir. 2001). The non-moving party must present evidence upon which the jury could reasonably find in his favor. *Jeffreys v. City of New York*, 426 F.3d 549, 553-54 (2d Cir. 2005); *see also D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998) (nonmoving party must offer "some hard evidence showing that its version of the events is not wholly fanciful").

## II.     Local Civil Rule 56.1

In this District, Local Civil Rule 56.1(a) requires the moving party to submit a "short and concise statement, in numbered paragraphs," of the material facts that the moving party contends to be undisputed, with citations to the underlying evidence. The non-moving party must then respond in kind, with numbered paragraphs that correspond "to each numbered paragraph in the statement of the moving party." Local Civ. R. 56.1(b). The non-moving party may also provide "a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." *Id.* To the extent not "specifically controverted" by the non-moving party, the statement of material facts submitted by the moving party will be "deemed to be admitted for purposes of the motion." Local Civ. R. 56.1(c); *see also Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party then fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.").

Where, as here, the party opposing summary judgment is proceeding *pro se*, the court should read his papers "liberally," and "interpret them to raise the strongest arguments that they suggest." *Burgos*, 14 F.3d at 790 (citing *Mikinberg v. Baltic S.S. Co.*, 988 F.2d 327, 330 (2d Cir. 1993)); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Thus, while "pro se litigants are 'not excused from meeting the requirements of Local Rule 56.1,'" *Diggs v. Volpe*, 2013 WL 4015758, at *1 n.1 (S.D.N.Y. Aug. 7, 2013) (quoting *Wali v. One Source Co.*, 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009)), the court has "broad discretion" to "overlook a party's failure to comply with local court rules," and may exercise that discretion to "conduct an assiduous review of the record" even where a *pro se* party has failed to file a statement complying with Local Civil Rule 56.1(b). *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (quoting *Monahan v. New York City Dep't of Corrections,* 214 F.3d 275, 292 (2d Cir. 2000)); *accord Feelings v. Stukes*, 2017 WL 3601241, at *5 n.1 (S.D.N.Y. Aug. 21, 2017); *Cain v. Esthetique*, 182 F. Supp. 3d 54, 63 (S.D.N.Y. 2016); *Vann v. Fischer*, 2014 WL 4188077, at *6 (S.D.N.Y. Aug. 25, 2014).[9]

By the same token, the moving party's "allegations of uncontested fact cannot be deemed true simply by virtue of their assertion in a Local Rule 56.1 statement." *Holtz*, 258 F. 3d at 73. The court may and should disregard assertions made in a Local Rule 56.1 statement if they are not supported by citations to admissible evidence. *Id.*; *see also Giannullo*, 322 F.3d at 140; *Cain*, 182 F. Supp. 3d at 63.

In this case, defendants urge me to disregard plaintiff's response to their Local Rule 56.1 Statement, and to deem the statements made therein admitted, because plaintiff's response is

---

[9] The Court is not obligated, however, to accept even a *pro se* litigant's factual assertions where they contradict his own previous statements or are otherwise "beyond belief." *Shabazz v. Pico*, 994 F. Supp. 460, 470 (S.D.N.Y. 1998) (Sotomayor, D.J.) (quoting *Dawes v. Coughlin,* 964 F. Supp. 652, 657 (N.D.N.Y.1997)), *vacated on other grounds by* 205 F.3d 1324 (2d Cir. 2000).

"improper, inadequate, largely unresponsive, and fails to comply with Local Rule 56.1" Reply Mem. at 1. Plaintiff's response, to be sure, falls short of the standard expected of a competent attorney. Since plaintiff is not an attorney, however, and has been unable to secure counsel – despite numerous requests – I will not hold him to that standard, nor will I "deem true" defendants' "allegations of uncontested fact" simply by virtue of their inclusion in an inadequately-countered Local Rule 56.1 statement. *Holtz*, 258 F. 3d at 73.[10] Instead, I have reviewed the record itself to determine which facts may properly be deemed undisputed.

## III. False Arrest

To establish a claim for false arrest under § 1983 (as under New York law), plaintiff must show that: (1) defendants intended to confine him; (2) plaintiff was conscious of the confinement; (3) plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. *Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003); *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (under both New York law and § 1983, "a plaintiff claiming false arrest must show, *inter alia*, that the defendant intentionally confined him without his consent and without justification"); *see also Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995); *Posr v. Doherty*, 944 F.2d 91, 97 (2d Cir. 1991); *Broughton v. State*, 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87, 93 (1975).

---

[10] For example, defendants repeatedly claim that it is undisputed that Officer Demkiw "observed plaintiff exchange a small object with Mr. Davis." Def. 56.1 Stmt. ¶ 5; *see also* Def. Mem. of Law at 8 ("it is undisputed that an exchange was witnessed by Police Officer Demkiw"). Plaintiff, however, has testified clearly that he did not give anything to Davis. Quezada Dep. Tr. at 36:13-18. If Quezada did not give anything to Davis, Dewkiw could not have seen the "exchange" upon which defendants rely. Moreover, there is no evidence that Demkiw saw Davis give anything to Quezada, as suggested by the use of the word "exchange." *See* Demkiw Aff. ¶ 6 ("I . . . observed plaintiff handing a small object to Mr. Davis.").

The parties do not dispute any element of the false arrest claim except for the last, which asks whether the confinement was "otherwise privileged," that is, whether there was probable cause to arrest the plaintiff. *Savino*, 331 F.3d at 75. "The existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest.'" *Gonzalez*, 728 F.3d at 155 (quoting *Weyant*, 101 F.3d at 852). Moreover, "a claim for false arrest turns only on whether probable cause existed to arrest a defendant," not whether probable cause existed "with respect to each individual charge." *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006). Thus, "when faced with a claim for false arrest, we focus on the validity of the *arrest,* and not on the validity of each *charge*." *Id*. (emphasis in the original).

### A. Probable Cause

Probable cause exists when an officer "has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient in themselves to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Gonzalez*, 728 F.3d at 155 (quoting *Weyant*, 101 F.3d at 852). *Accord United States v. Fisher*, 702 F.2d 372, 375 (2d Cir. 1983); *Boyd v. City of New York*, 336 F.3d 72, 75-76 (2d Cir. 2003). "By definition, only the 'probability' of criminal conduct must be shown – certainty is not required." *Hardy v. Baird*, 2016 WL 2745852, at *9 (S.D.N.Y. May 10, 2016) (citing *Illinois v. Gates*, 462 U.S. 213, 231 (1983)). Where, as here, the arrest "is not made pursuant to a judicial warrant, the defendant . . . bears the burden of proving probable cause as an affirmative defense." *Dickerson v. Napolitano*, 604 F.3d 732, 751 (2d Cir. 2010) (citing *Broughton*, 37 N.Y.2d at 458, 373 N.Y.S.2d at 95).

In evaluating probable cause, the court is to "consider the facts available to the officer at the time of the arrest." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997) (citing

*Lowth v. Town of Cheektowaga*, 82 F.3d 563, 569 (2d Cir. 1996)). Probable cause can exist even if the arresting officer relied on mistaken information, so long as he "acted reasonably and in good faith in relying on that information." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994). Similarly, "[e]ven if the basis for the arrest dissipated subsequent to the arrest, it does not eliminate the probable cause that existed at the time of the arrest." *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 419 (S.D.N.Y. 2002) (citing *Dukes v. City of New York,* 879 F. Supp. 335, 341 (S.D.N.Y.1995)).

It is well-settled that "[t]he validity of [an] arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979); *see also Ampratwum v. City of New York*, 2013 WL 1935321, at *7 (S.D.N.Y. May 9, 2013) ("Whether a plaintiff was eventually acquitted of the charges against her is not relevant to the probable cause determination."), *aff'd sub nom. Fisher v. City of New York*, 563 F. App'x 6 (2d Cir. 2014); *Cortes v. City of New York*, 148 F. Supp. 3d 248, 254 (E.D.N.Y. 2015) ("The fact that charges were dropped does not in any way alter the conclusion that [the defendant police officer] had probable cause to effect the arrest.")

In this case, I conclude that defendants have met their burden of showing that probable cause existed for the arrest. It is undisputed that plaintiff and Casella were observed interacting with another man, Davis, in an area known for drug sales, and that when Davis was arrested, shortly after the interaction, he had two zips of cocaine in his pocket. It is similarly undisputed that, upon arrest, Davis stated that plaintiff had offered him crack cocaine and suboxone, but that he had not been interested in the suboxone. The "most natural meaning" of Davis's statement, *Gonzalez*, 728 F.3 at 156, is that Davis had obtained the crack cocaine found in his pocket from

plaintiff. When plaintiff was stopped, moments later, he was carrying suboxone – thus corroborating, at least in part, Davis's statement. It is further undisputed that defendant Demkiw, who observed the interaction among plaintiff, Casella, and Davis, radioed members of his team, including Bakraqi, to inform them that he "had observed plaintiff engage in a hand-to-hand drug transaction" with Davis, "from whom I recovered drugs," Demkiw Aff. ¶ 12; *see also* Glover Aff. ¶ 4. In my view, the totality of the circumstances were "sufficient to warrant a person of reasonable caution in the belief" that plaintiff committed a criminal offense. *Boyd*, 336 F.3d at 75-76.

As noted above, plaintiff has consistently denied that he gave anything to Davis, thereby raising a dispute of fact as to whether Demkiw could have seen the hand-to-hand transaction that he reported to his colleagues. However, that dispute is not material, because all parties agree that some interaction took place among plaintiff, Casella, and Davis, after which Davis was found with cocaine and indicated that it came from plaintiff. In addition, all parties agree that when plaintiff was stopped a few minutes later he was carrying suboxone – the second drug that, according to Davis, plaintiff had offered him. Moreover, there is nothing in the record to indicate that Bakraqi did not act "reasonably and in good faith in relying on [the] information" he received from Demkiw. *Bernard*, 25 F.3d at 102. *See Gonzalez*, 728 F.3d at 155 n.3 (quoting *People v. Pacer*, 203 A.D.2d 652, 653, 610 N.Y.S.2d 636 (3d Dep't 1994) ("where an arresting officer has acted on the basis of a radio communication from a fellow officer who has personal knowledge of the facts transmitted, he or she presumptively possesses the requisite probable cause").

Plaintiff argues that the police could not have had probable cause to arrest him because there was no evidence of money changing hands, noting that Demkiw did not observe any exchange of currency, and that no cash was found on plaintiff's person at arrest. Pl. Mem. of Law at 1-2. While the exchange of currency may be "a factor in supporting probable cause" for a drug

sale arrest, *United States v. Washington*, 2003 WL 21250681, at *2 (S.D.N.Y. May 29, 2003 (citing *People v. Schlaich,* 218 A.D.2d 398, 640 N.Y.S.2d 885, 887 (1st Dep't 1996), and *People v. Jones,* 219 A.D.2d 417, 643 N.Y.S.2d 987, 989 (1st Dep't 1996)), it is not an element of the crime, and therefore could not be required to establish probable cause for the arrest. *See* N.Y. Penal Law § 220.00 ("[s]ell," as that term is used in § 220.39, means "to sell, exchange, *give or dispose of* to another, or to *offer or agree to do the same*") (emphases added); *People v. Starling*, 85 N.Y.2d 509, 515, 626 N.Y.S.2d 729, 732 (1995) ("[P]roof of the transfer of the drugs alone may suffice to prove the sale."). For the possession charge, no "sale" of any kind need be shown.

Finally, plaintiff argues that there was no probable cause to arrest him because he had "proof" of his prescription for suboxone on his person at the time of the arrest. Pl. Mem. of Law at 2; *see also* Pl. Opp. ¶¶ 5, 8. However, the record does not contain any testimony or other admissible evidence supporting this assertion. Moreover, even if plaintiff raised a triable issue of fact on this point, it would not undercut the existence of probable cause for the arrest.

The suboxone itself was in a plastic bag, not a prescription container, *see* Ryan Decl. Ex. K, at 5, and there is no indication in the record that plaintiff showed any "proof" of his prescription to the arresting officer, or even explained, at that time, that the suboxone was lawfully prescribed for him. *See* Quezada Dep. Tr. at 45:14-15. While "an officer may not disregard plainly exculpatory evidence," *Panetta v. Crowley,* 460 F.3d 388, 395 (2d Cir. 2006), "he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Id.* at 396 (quoting *Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001)). Consequently, even if plaintiff told defendants that he had a valid suboxone prescription, defendants were not required to investigate that claim before arresting him on the possession charge. *See, e.g.*, *Cortes*, 148 F. Supp. 3d at 253 (police officer was not required to investigate or credit plaintiff's

explanation as to why he had placed a quantity of lawfully-prescribed clonazepam pills in a plastic film canister before making arrest); *Michaels v. City of New York*, 2011 WL 570125, at *2, 6 (S.D.N.Y. Feb. 16, 2011) (finding police were entitled to seize drugs from plaintiff believing them to be ecstasy, even though an investigation would have determined that they were Klonopin, lawfully prescribed for plaintiff).

Even if plaintiff was carrying – and displayed – a prescription for the suboxone found on his person, it would be unlawful to sell that drug (or offer to sell it) to another, *see*, *e.g.*, *Cortes*, 148 F. Supp. 3d at 253, just as it would be unlawful to sell (or offer to sell) crack cocaine. Moreover, as noted above, so long as defendants had probable cause to arrest Quezada on the sale charge their conduct was privileged, even if they lacked probable cause for the possession charge. The Supreme Court has "rejected the view that probable cause to arrest must be predicated upon the offense invoked by the arresting officer, or even upon an offense 'closely related' to the offense invoked by the arresting officer." *Jaegley*, 439 F.3d at 154 (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)); *see also Russell v. Journal News*, 2015 WL 13203928, at *5 (S.D.N.Y. Dec. 10, 2015), *aff'd sub nom. Russell v. The Journal News*, 672 F. App'x 76 (2d Cir. 2016) ("[A]s long as the Defendant officers had probable cause to arrest Plaintiff for *any* crime, the arrest is privileged and cannot form the basis for a false arrest claim under § 1983.") (emphasis added).

Here, the facts known to the police when plaintiff was arrested included the interaction among plaintiff, Casella, and Davis in a location known for drug sales; the cocaine found in Davis's pocket shortly thereafter; Davis's statement that plaintiff had offered him both cocaine and suboxone; and the suboxone in plaintiff's pocket. On this basis, I have no difficulty concluding that defendants had "knowledge or reasonably trustworthy information of facts and circumstances" that were "sufficient to warrant a person of reasonable caution in the belief that [plaintiff]

committed . . . a crime." *Gonzalez*, 728 F.3d at 155. I therefore recommend, respectfully, that the District Judge grant summary judgment to defendants on plaintiff's false arrest claim.[11]

## B. Qualified Immunity

Even if probable cause were lacking for plaintiff's arrest, the doctrine of qualified immunity would still entitle defendants to summary judgment on his false arrest claim. A police officer is entitled to qualified immunity if "(1) his conduct d[id] not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." *Jenkins v. City of New York*, 478 F.3d 76, 96 (2d Cir. 2007) (internal quotations omitted); *see*

---

[11] Although no party has raised the issue, the record in this action prompts me to consider the legality of the pre-arrest search, conducted without a warrant or any evidence of consent, that uncovered plaintiff's suboxone. Since defendants rely on the fruits of that search to furnish probable cause for the arrest, *see* Glover Aff. ¶ 10; Def. 56.1 Stmt. ¶ 17; Def. Mem. of Law at 8, it cannot be justified as "incident to" the same arrest. *See Rawlings v. Kentucky*, 448 U.S. 98, 111 & n.6 (1980) (search may be lawfully conducted as "incident to" arrest even if it "precede[s] the arrest" in time, but only where police already had probable cause to arrest); *Smith v. Ohio,* 494 U.S. 541, 543 (1990) ("[I]t is axiomatic that an incident search may not precede an arrest *and* serve as part of its justification.") (emphasis added; internal quotation marks and citation omitted); *United States v. Donaldson,* 793 F.2d 498, 503 (2d Cir. 1986) ("To be sure, care must be taken to avoid bootstrapping that allows the fruits of a search incident to an arrest to provide the basis for the arrest."); *United States v. Davis*, 111 F. Supp. 3d 323, 335 (E.D.N.Y. 2015) ("Bootstrapping evidence found in a search 'incident to arrest'. . . so that the fruits of a search incident to arrest themselves provide the justification for the arrest, is not permissible."). Nor do defendants offer any other justification for the pre-arrest search of plaintiff's person. "The Second Circuit, however, has squarely rejected the theory that evidence that is the 'fruit of the poisonous tree' so as to warrant suppression in a criminal trial must be excluded for purposes of assessing probable cause in a civil § 1983 action." *Magnum v. City of New York*, 2016 WL 4619104, at *7 (S.D.N.Y. Sept. 2, 2016) (citing *Townes v. City of New York*, 176 F.3d 138, 145 (2d Cir. 1999)). Even if the suboxone was the fruit of an unlawful search, therefore, defendants may still rely on it, in this § 1983 action, to furnish probable cause for the arrest. *See Townes*, 176 F.3d at 149 ("The lack of probable cause to . . . search does not vitiate the probable cause to arrest" furnished by the results of the search.); *see also Magnum*, 2016 WL 4619104, at *7 (dismissing malicious prosecution claim where probable cause was supplied by fruits of unlawful search); *Hardy*, 2016 WL 2745852, at *9-11 (granting summary judgment to defendants on false arrest and malicious prosecution claims where a "purportedly unlawful search" of plaintiff's purse revealed "prescription pills in an unmarked prescription pill bottle," which furnished the probable cause for her arrest).

*also Gonzalez*, 728 F.3d at 154. Qualified immunity covers "mere mistakes in judgment, whether the mistake is one of fact or one of law." *Butz v. Economou,* 438 U.S. 478, 507 (1978). *See also Sudler v. City of New York*, 689 F.3d 159, 174 (2d Cir. 2012) ("Qualified immunity shields government officials from liability even when they make 'reasonable mistakes' about the legality of their actions.").

"As applied to the arrest context, the Second Circuit has held that, even without probable cause, an 'arresting officer will still be entitled to qualified immunity from a suit for damages if he can establish that there was "arguable probable cause" to arrest.'" *Wagner v. City of New York*, 2015 WL 5707326, at *6 (S.D.N.Y. Sept. 28, 2015) (Caproni, J.) (quoting *Escalera v. Lunn,* 361 F.3d 737, 743 (2d Cir. 2004)). "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Escalera*, 361 F.3d at 743 (citing *Golino v. City of New Haven,* 950 F.2d 864, 870 (2d Cir. 1991), and *Caldarola v. Calabrese,* 298 F.3d 156, 162 (2d Cir. 2002)). The doctrine recognizes, among other things, that "[o]fficers charged with making moment-to-moment decisions," often in dangerous conditions, cannot be expected to undertake the same "careful parsing" of the evidence and "close examination of the elements of a number of different criminal statutes" that a reviewing court performs when analyzing probable cause. *Gonzalez*, 728 F.3d at 157. Since qualified immunity is an affirmative defense, defendants bear the burden of proving their entitlement to dismissal on that theory. *Wagner*, 2015 WL 5707326, at *6 (citing *Coollick v. Hughes,* 699 F.3d 211, 219 (2d Cir. 2012)); *Sudler*, 689 F.3d at 174.

In this case, the information "possessed by the officer at the time of the arrest," *Garcia,* 779 F.3d at 92, made it "objectively reasonable" for Detective Bakraqi to believe he had probable

cause to make an arrest. He knew that plaintiff had interacted with Davis in an area known for drug transactions. He had reason to believe, based on Demkiw's radio message, that his colleague had witnessed plaintiff conducting a hand-to-hand transaction, and he also knew that cocaine was found in Davis's pocket moments later. In addition, Davis stated that plaintiff had given him the cocaine. I therefore conclude that there was at least "arguable probable cause" to place plaintiff under arrest, and I respectfully recommend, in the alternative, that the District Judge dismiss his wrongful arrest claim based on qualified immunity.

**IV.    Malicious Prosecution**

The law imposes "a heavy burden on malicious prosecution plaintiffs." *Rothstein v. Carriere*, 373 F.3d 275, 282 (2d Cir. 2004) (citation omitted). To prevail on a constitutional claim based on malicious prosecution, a plaintiff must first satisfy the elements of the claim under New York law: (1) that the defendant commenced or continued a criminal proceeding against him; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice. *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003); *see also Boyd*, 336 F.3d at 76. A plaintiff suing under § 1983 must additionally show a post-arraignment deprivation of his liberty in violation of the Fourth Amendment. *Manganiello v. City of New York*, 612 F.3d 149, 161 (2nd Cir. 2010); *Soomro v. City of New York*, 174 F. Supp. 3d 806, 813 (S.D.N.Y. 2016); *Lora v. City of New York*, 2016 WL 4074433, at *7 (S.D.N.Y. July 29, 2016) (Caproni, J.).

The parties here do not dispute that plaintiff was incarcerated following his arraignment or that the criminal proceeding was terminated in plaintiff's favor. However, defendants argue that they are entitled to summary judgment because plaintiff cannot raise a triable issue of fact as to the first, third, and fourth elements of his claim.

## A.     Commencement of Criminal Proceedings

I cannot conclude that defendants are entitled to summary judgment on the ground that none of them "initiated or continued a criminal proceeding against plaintiff." Def. Mem. of Law at 10. "While police officers do not generally 'commence or continue' criminal proceedings against defendants, a claim for malicious prosecution can still be maintained against a police officer if the officer is found to 'play[ ] an active role in the prosecution.'" *Bermudez v. City of New York*, 790 F.3d 368, 377 (2d Cir. 2015) (quoting *Manganiello,* 612 F.3d at 163). An officer plays an "active role in the proceedings" where he "giv[es] advice and encouragement or importun[es] the authorities to act," *Manganiello*, 612 F.2d at 163, or where he signs the criminal complaint that initiates the prosecution or provides the information set forth therein. *See, e.g.*, *Cameron v. City of New York*, 598 F.3d 50, 63 (2d Cir. 2010) ("As a matter of law, [officers] Ramos and Rivera's filing of the Criminal Court Complaint 'initiated' the prosecution against Cameron."); *Costello v. Milano*, 20 F. Supp. 3d 406, 415 (S.D.N.Y. 2014) (noting that an officer plays an active role by "having the plaintiff arraigned," completing "complaining and corroborating affidavits," and "signing felony complaints") (internal quotation marks omitted); *Williams v. City of New York*, 2012 WL 547508, at *6 (S.D.N.Y. Feb. 17, 2012) (plaintiff satisfied first element of malicious prosecution claim as to police officer who "signed a criminal complaint that led to Plaintiff[']s eventual indictment"); *Sankar v. City of New York*, 2012 WL 2923236, at *9 (E.D.N.Y. July 18, 2012) ("[A]n officer's filing of a sworn complaint is sufficient to satisfy the initiation prong of a malicious prosecution claim.").

Here, Detective Bakraqi signed the Criminal Court Complaint against plaintiff, based in part on information provided by Officer Demkiw and Detective Glover. *See* Ryan Decl. Ex. H. Moreover, there is no evidence in the record to suggest that the District Attorney exercised sufficient "independent prosecutorial judgment," *Brown v. City of New York*, 2014 WL 5089748,

at *7 (S.D.N.Y. Sept. 30, 2014), to insulate the police officers who prepared the initial charging document from malicious prosecution claims. *Cf. Angevin v. City of New York*, 204 F. Supp. 3d 469, 480-81 (E.D.N.Y. 2016) (officer who did nothing more than "disclose to the prosecutor the material information within his knowledge" did not initiate the prosecution). In fact, there is *no* information in the record as to what happened between January 19, 2013, when plaintiff was arrested, charged, and arraigned, and May 1, 2013, when the charges against him were dismissed for unknown reasons. The summary judgment record does not even disclose when – or whether – plaintiff was indicted. *See* Ryan Decl. Exs. A, H, L. Defendants therefore have not carried their burden of identifying the parts of the record that demonstrate that they did not "initiate" the prosecution.

### B. Probable Cause

Even if defendants initiated the prosecution, they are entitled to summary judgment so long as they had probable cause to do so. The "existence of probable cause is a complete defense to a claim of malicious prosecution in New York." *Savino,* 331 F.3d at 72; *see also Lora*, 2016 WL 4074433, at *7. Moreover, "to sustain a malicious prosecution claim where probable cause existed to make the arrest, a plaintiff must show that defendants learned of intervening facts between the arrest and the initiation of the prosecution that undermined the initial probable cause determination." *Lora*, 2016 WL 4074433, at *7 (citing *Powell v. Murphy*, 593 Fed. App'x 25, 28 (2d Cir.2014)); *see also Lowth*, 82 F.3d at 571-72 (citing *Callan v. State,* 73 N.Y.2d 731, 535 N.Y.S.2d 590 (1988)) (once probable cause has been established for the arrest, plaintiff can rebut the presumption that probable cause continues to exist if he can demonstrate the existence of some intervening fact that would render the charges "groundless"); *Nzegwu v. Friedman*, 605 F. App'x 27, 31 (2d Cir. 2015) ("In order for probable cause to dissipate, allowing a malicious prosecution claim to go forward despite the existence of probable cause for the plaintiff's arrest, the groundless

nature of the charge must be made apparent by the discovery of some intervening fact.") (internal quotation marks omitted).

At the prosecution stage, however, probable cause must exist for "each charge brought against the plaintiff." *Klein v. Zugabie*, 2017 WL 374733, at *9 n.16 (S.D.N.Y. Jan. 24, 2017); *see also Diop v. City of New York*, 50 F. Supp. 3d 411, 421 (S.D.N.Y. 2014). "Where a defendant is arrested and prosecuted for multiple crimes, the fact that the arrest might have been lawful because the police had probable cause to believe the defendant had committed *at least one* of those crimes is not, in itself, sufficient to demonstrate a basis for his prosecution for *all* of the crimes." *Allen v. City of N.Y.*, 480 F. Supp. 2d 689, 715 (S.D.N.Y. 2007) (emphasis added).

Construing his arguments liberally, plaintiff suggests that the discovery of his suboxone medication constituted an intervening fact that rendered his prosecution for criminal sale and possession of a controlled substance groundless. *See* Pl. Mem. at 2 (arguing the suboxone was used "without probable cause" to justify his arrest despite his "proof of [prescription]"). It is undisputed, however, that the suboxone was found prior to his arrest, in a plastic bag. That discovery furnished part of the probable cause for the arrest. It also furnished probable cause for the misdemeanor possession charge in the Criminal Court Complaint.[12] The fact that plaintiff referred to the suboxone as his "medication" after arrest – and ultimately persuaded jail officials to administer that medication to him to alleviate his withdrawal symptoms – shows only that those officials believed he had a medical condition for which suboxone was an appropriate treatment. Probable cause for the felony criminal sale charge, as noted above, was properly based on the interaction

---

[12] Since the "fruit of the poisonous tree" doctrine does not apply in § 1983 actions, defendants may rely on the suboxone – even if discovered during an unlawful search – to defend against plaintiff's malicious prosecution claims as well as his false arrest claims. *See, e.g.*, *Magnum*, 2016 WL 4619104, at *7; *Hardy*, 2016 WL 2745852, at *10-11.

between plaintiff and Davis, the cocaine found on Davis's person, and Davis's statements implicating plaintiff. The same evidence supported the felony possession charge under N.Y. Penal Law § 220.16(1), which was presumably based on the cocaine that the police found on Davis's person but reasonably believed to have originated with plaintiff.[13] Moreover, while defendants do not expressly argue that they are entitled to qualified immunity on the malicious prosecution claim, there was at least *arguable* probable cause to commence proceedings against the plaintiff, such that summary judgment could be granted on that ground. *See Deanda v. Hicks*, 137 F. Supp. 3d 543, 575 (S.D.N.Y. 2015) (where prescription did not clearly constitute a defense to criminal possession charge, there was "arguable probable cause to institute criminal proceedings" against the plaintiff).

### C.   Malice

Because probable cause – or at least arguable probable cause – existed for each count of the Criminal Court Complaint, plaintiff's claim of actual malice fails as a matter of law. *See, e.g.*, *Fulton v. Robinson*, 289 F.3d 188, 198 (2d Cir. 2002) (citation omitted) (quoting *Lowth*, 82 F.3d at 573) (finding no malice where an arrest had been made "on probable cause," and plaintiff "adduced no evidence from which it could be inferred that the prosecution was commenced out of

---

[13] Cocaine is a "narcotic" within the meaning of § 220.16(1). *See* N.Y. Pub. Health Law § 3306. Moreover, "because direct proof of an individual's intent [in third degree possession cases] is typically lacking, [the] intent element is generally established circumstantially by evidence of the person's conduct and/or statements." *Pena v. State of New York*, 2008 WL 4067339, at *2 (S.D.N.Y. Aug. 26, 2008) (citing *Wilson v. Senkowski*, 2003 WL 21031975, at *10–11 (S.D.N.Y. May 7, 2003)), *adopting report and recommendation*, No. 04 Civ. 9499 (S.D.N.Y. June 2, 2008). Here, a jury could reasonably conclude that there was probable cause that plaintiff intended to sell the cocaine that was recovered from Davis because Davis stated that plaintiff was the one who had offered it to him. *See People v. Hughes*, 66 A.D.3d 701, 702-03, 886 N.Y.S.2d 749, 751 (2d Dep't 2009) (finding that the transfer of a shiny plastic object that was later determined to be narcotics from defendant to a suspect in the back seat of his vehicle was legally sufficient evidence for an indictment under N.Y. Penal Law § 220.16(1)).

any motive other than a desire to serve the ends of justice"); *Lora*, 2016 WL 4074433, at *7

(finding no triable of fact as to malice where probable cause existed). Since "malice may only be

inferred where probable cause to initiate a proceeding is totally lacking," *Smith v. City of New

York*, 2010 WL 3397683, at *9 (S.D.N.Y. Aug. 27, 2010) (internal quotation marks omitted), no

malice may be inferred here. I therefore recommend, respectfully, that summary judgment be

granted to defendants on plaintiff's malicious prosecution claim.

## V.     Plaintiff's Remaining Claims

Plaintiff's claims arising from the strip search at the precinct, and from the delay in

providing his medication after arrest, do not require extended analysis. Neither plaintiff nor

defendants briefed the search issue. Further, although plaintiff stated at deposition that he "would

like to sue for that," Quezada Dep. Tr. at 48:9, he has failed to produce any evidence that would

permit a trier of fact to find that the search at the precinct – which he never describes beyond

characterizing it as a "strip search" – was unreasonable. *See Hartline v. Gallo*, 546 F.3d 95, 100

(2d Cir. 2008) (quoting *Maryland v. Macon,* 472 U.S. 463, 470-71 (1985)) ("[w]hether a particular

strip search is constitutional 'turns on an objective assessment of the . . . facts and circumstances

confronting [the searching officer] at the time'") (alterations in *Hartline*); *Gonzalez*, 728 F.3d at

158 ("The law governing these types of searches is far from settled; the rules alter with

circumstances, and the circumstances are myriad."). Absent even the most basic information

concerning "the scope of the [search], the manner in which it [was] conducted, the justification for

initiating it, and the place in which it [was] conducted," *Moore v. Hearle*, 639 F. Supp. 2d 352,

357 (S.D.N.Y. 2009) (quoting *Bell v. Wolfish*, 441 U.S. 520, 558 (1979)), the Court cannot even

begin to assess whether defendants (who, according to plaintiff, were merely "present" when he

was searched, Quezada Dep. Tr. at 75:14-17), may have violated his right to be free from

"unreasonable" searches. *See Cabral v. City of New York*, 2014 WL 4636433, at *8 (S.D.N.Y.

Sept. 17, 2014) (dismissing strip search claim on summary judgment where plaintiff failed to provide anything beyond conclusory allegations about the search). Consequently, to the extent that plaintiff's papers may be deemed to raise or preserve a clam for an unlawful strip search, I recommend that summary judgment be granted on that claim.

Defendants are also entitled to summary judgment on plaintiff's claim for denial of medical care after his arrest. To prevail on such a claim, plaintiff must show that defendants acted with "deliberate indifference" to a serious medical condition or need. *Estelle v. J.W. Gamble*, 429 U.S. 97, 106 (1976); *Weyenat v. Okst*, 101 F.3d 845, 856 (2d Cir. 2014). Here, plaintiff's testimony suggests that he sought medical attention on his way to the precinct, as well as during his subsequent detention, *see* Quezada Dep. Tr. at 51:4-17, thus raising a triable issue of fact as to whether defendants were subjectively aware of plaintiff's medical needs. *See Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) (deliberate indifference claim requires a showing that defendant was aware that his conduct created a risk of harm); *Weyant*, 101 F.3d at 856 (deliberate indifference claim requires a subjective determination of the defendant's knowledge of the risk to the inmate's health or safety).

However, there is no evidence that defendants were present when plaintiff's requests for medication were "ignored at the precinct," much less that they were the individuals to whom those requests were made once he arrived at the precinct. *See* Quezada Dep. Tr. at 51:18-19 ("Q. And who did you ask for medical attention? A. I can't recall."). Moreover, although plaintiff testified that he "felt sick" without his medication, *id.* at 68:11-14, he has not submitted any evidence that would permit a reasonable jury to find that his condition was "sufficiently serious," *Weyant*, 101 F.3d at 852, 856, to present a constitutional claim. *See, e.g.*, *Belloto v. Cnty. of Orange,* 248 F. App'x 232, 237 (2d Cir. 2007) (finding no claim for denial of medical care where the only injury

brought on by missed doses of medication "was an anxiety attack"). Moreover, plaintiff acknowledges that he received his medication "when I hit the jail," or possibly "later on down the line," Quezada Dep. Tr. at 68:16-17, after which he "felt better." *Id*. at 68:18-23. Plaintiff therefore cannot show any "prolonged delays" in treating his less serious condition. *See Lynch v. Jane Doe Corr. Officer Blue*, 2016 WL 831969, at *6 (S.D.N.Y. Feb. 29, 2016) (a minor delay in treatment that did not create or worsen plaintiff's condition "cannot form the basis of a constitutional claim").

Similarly, to the extent that plaintiff may be deemed to have alleged that his arrest (or prosecution) was due to racial profiling in violation of the Equal Protection Clause, that claim cannot survive summary judgment. To prevail on an Equal Protection claim, plaintiff must show that defendants were motivated by a discriminatory purpose in arresting (or prosecuting) him. *See Floyd v. City of New York*, 959 F. Supp. 2d 540, 570-71 (S.D.N.Y. 2013); *Aguilar v. Immigration & Customs Enf't Div. of the U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 803, 820 (S.D.N.Y. 2011) ("[P]laintiffs are required to plead that an individual defendant against whom relief is sought acted with discriminatory purpose."). Discriminatory purpose can be shown through direct or circumstantial evidence. *Floyd*, 959 F. Supp. 2d at 571. In his opposition papers, however, plaintiff fails to provide even a scintilla of evidence in support of his claim that defendants' conduct was motivated by a discriminatory purpose. At deposition, plaintiff admitted that he simply felt that "he was targeted for no reason. Whether it was for race or something, I don't know." Quezada Dep. Tr. at 50:17-18, 48:25-49:1. No rational trier of fact could conclude, on this basis, that plaintiff was targeted for arrest (or prosecution) because of his race or other protected characteristic. Consequently, I respectfully recommend that summary judgment be granted to defendants on plaintiff's Equal Protection claim.

Finally, defendants are entitled to summary judgment as to plaintiff's claim that the police applied his handcuffs with excessive force in violation of the Fourth Amendment. In evaluating whether handcuffing amounts to excessive force, courts in this Circuit consider (1) whether the handcuffs were unreasonably tight; (2) whether defendants ignored the arrestee's pleas that the handcuffs were too tight; and (3) the degree of injury to the wrists. *Cabral*, 2014 WL 4636433, at *11; *Usavage v. Port Auth. of New York & New Jersey*, 932 F. Supp. 2d 575, 592 (S.D.N.Y. 2013); *Pelayo v. Port Auth.*, 893 F. Supp. 2d 632, 642 (S.D.N.Y. 2012). To defeat summary judgment, plaintiff must show more than "de minimis" injuries, that is, injuries beyond temporary discomfort. *Usavage*, 932 F. Supp. 2d at 592; *Drummond v. Castro*, 522 F. Supp. 2d 667, 678-79 (S.D.N.Y. 2007).

Here, plaintiff does not allege any handcuff-related injury beyond temporary abrasions, for which he "might have asked for some A and D ointment." Quezada Dept. Tr. at 65:4-6, 16-19. Moreover, he testified that he did not request that his handcuffs be loosened, and he "didn't need to see a doctor" when he arrived at the jail. *Id.* at 65:12. Plaintiff therefore cannot meet his burden of raising a triable issue of fact as to whether the handcuffing amounted to excessive force. As a result, summary judgment should be granted to defendants on this claim as well.

## **CONCLUSION**

For the foregoing reasons, I respectfully recommend that defendants' motion for summary judgment be GRANTED and that the case be DISMISSED. Insofar as plaintiff's submissions may be construed as a motion to amend his complaint to include discrimination, excessive force, and unlawful search claims, I recommend that the motion be DENIED, both because it is untimely and because plaintiff has made no showing that he can allege any set of facts that would state a claim upon which relief can be granted.

The Clerk of the Court is requested to mail a copy of this Report and Recommendation to the plaintiff.

### NOTICE OF PROCEDURE FOR FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

The parties shall have 14 days from this date to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the Hon. Valerie Caproni at 500 Pearl Street, New York, New York 10007, and to the chambers of the undersigned magistrate judge. Any request for an extension of time to file objections must be directed to Judge Caproni. Failure to file timely objections will preclude appellate review. *See Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466 (1985)*; Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

Dated: New York, New York
        September 7, 2017

                    **SO ORDERED.**

                    _____
                    **BARBARA MOSES**
                    **United States Magistrate Judge**